IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT S. LLOYD, #250886,

Plaintiff,

v.

LT. WAYLON COUSINS & WARDEN ANTONIO MCCLAIN,

Defendants.

CIVIL ACTION NO. 2:19-CV-411-MHT-CSC

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I. INTRODUCTION[1]

This 42 U.S.C. § 1983 action is before the court on a complaint filed on June 13, 2019, by Robert S. Lloyd, a state inmate, in which he alleges that the Defendants acted with deliberate indifference in failing to protect him from assault by a fellow prisoner on April 15, 2019, and in failing to ensure he received adequate medical attention for the resulting injury to his eye. (Doc. 8 at p. 6). He names as Correctional Defendants Lt. Waylon Cousins and Warden Antonio McClain. He does not name any personnel providing him medical assistance as a Defendant. He also does not specify whether he sues the Defendants in their individual or official capacities and he seeks money damages. (Doc. 8 at p. 7).

The Defendants filed special reports and relevant evidentiary materials in support of their reports, including affidavits, addressing the claims raised in the complaint, as amended. In these

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk in the docketing process.

documents, the Correctional Defendants maintain they did not act with deliberate indifference to Plaintiff's safety or to his medical needs. (Doc. 33).

After reviewing the special reports filed by the Defendants, the court issued an order on February 20, 2020, directing Defendants to file a response to each of the arguments set forth by the Defendants in their reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. (Doc. 38). The order specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 38 at p. 2). Lloyd filed a sworn response to this order on January 21, 2020. (Doc. 39). Thereafter, Lloyd filed Supplements to his Response (Docs. 41 and 43).

## II. STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

## III. FACTS

The Plaintiff alleges that on April 15, 2019, while he was housed in Bullock Correctional Facility, a fellow inmate, Dedric Shepherd, attacked him and robbed him. When Plaintiff attempted to regain possession of the stolen objects, inmate Shepherd beat him with a mop handle causing damage and swelling to his left eye. (Doc. 8 at p. 6). He claims that the fight lasted twenty minutes because there was no officer available to help him. (Doc. 1 at p. 3). He also complains that Shepherd was never put in lock up. *Id.* He states that he was taken to "the ER and all they did was patch me up and sent me back to my dorm." *Id.* He further complains that he was not taken to a free world hospital and no MRI was performed. (Doc. 8 at p. 6). He states that on June 12, 2019, he was seen by free-world doctors at the Dothan Eye Center and the free-world doctors told him that the attack caused pressure to build up in his eye which damaged tissues and caused

loss of sight in that eye. *Id.* He claims if Defendants had ensured that he received free-world treatment sooner, his eye could have been saved. *Id.*

The undisputed evidence demonstrates that due to the April 15, 2019, 10:50 a.m. altercation, both Plaintiff and Shepherd were cited for disorderly conduct. (Doc. 33-5 pp. 1-13). At this time, the Mental Health Treatment Unit, including the Residential treatment unit where the alleged assault occurred, was staffed by three (3) DOC personnel. (Docs. 33-2 at p.3; 33-4 at p.2).

The undisputed medical evidence confirms that Plaintiff was seen by prison medical staff on April 15, 2019, at 11:15 a.m. and they noted the following: "laceration to upper left eyebrow, upper and lower eye swollen. Large amount of bleeding due to inmate taking aspirin daily." (Doc. 33-1 at p. 3). Due to the bleeding, pressure dressing on left eye was ordered for 5 days. (Doc. 33-7 at pp. 22-23). Also, on April 15, 2019, x-rays performed on the Plaintiff's face confirms no injury to the bony orbits or facial bones. (Doc. 33-6 at pp.10-13). Wexford Medical records demonstrate numerous instances of onsite treatment of the Plaintiff's eye injury by Wexford clinicians including compression bandaging, medication for pain, and x-rays. (Docs. 33-6, 33-7, 33-8, 33-9). Furthermore, Wexford referred him free-world eye doctors beginning on April 24, 2019. (Doc. 33-10 at p. 9). Plaintiff was seen by free-world eye doctors on May 17, 2019, (Doc. 33-9 at p. 27), August 30, 2019, (Doc. 33-9 at p. 9), October 11, 2019, (Doc. 33-8 at p.11) and November 13, 2019 (Doc. 33-8 at p. 7).

As to the medical care provided to the Plaintiff, both Defendants, Lt. Waylon Cousins and Warden Antonio McClain testified that "[a]t no time was I ever responsible for determining necessary medical care to be provided to inmate Lloyd. The Alabama Department of Corrections contracts with Wexford to make sure that all inmates incarcerated with ADOC, including inmate Lloyd, receive necessary medical treatment and/or care for their necessary medical needs. At no

time have I ever denied or delayed necessary medical care to inmate Lloyd due to the fact that I am not a trained medical provider and have never been asked to or had anything to do with any medical care provided to inmate Lloyd." (Docs. 33-2 at pp. 2-3 and 33-3 at pp. 1-2).

## IV. DISCUSSION[2]

### A. Deliberate Indifference Generally

The law is well-settled that establishment of both objective and subjective elements are necessary to demonstrate a violation of the protections afforded by the Eighth Amendment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official [was] aware of this substantial risk, the official must [have] react[ed] to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty. Ala.,* 268 F.3d 1014 at 1028–29 (11th Cir. 2001) *abrogated on other grounds by Bell Atl. Corp v. Twombly,* 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan,* 511 U.S. 825, 837–38 (1994);

---

2 The court limits its review to the allegations set forth in the complaint. (Doc. 1). *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909–10 (11th Cir. 2012) (holding that plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

*Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).

The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.*

**C. Failure to Protect**

To survive the properly supported motion for summary judgment filed by the Defendants, Lloyd must first demonstrate an objectively substantial risk of serious harm existed to him and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, Lloyd must then satisfy the subjective component. This requires Lloyd to show "that [each] defendant subjectively knew that [he] faced a substantial risk of serious harm. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear ***felt by [the] [p]laintiff***." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original). The Plaintiff fails to offer any evidence or to even allege that the named Defendants had any knowledge that inmate Dedric Shepherd posed a threat of serious harm to him. Accordingly, the court concludes summary judgment is due to be granted in favor of the Defendants on the Plaintiff's failure to protect claim.

**D. Deliberate Indifference to Medical Needs.**

Lloyd also alleges that Correctional Defendants, as wardens or correctional officers, are responsible for ensuring that he received appropriate medical treatment as a result of the injuries he received from the April 15, 2019, alleged assault. These assertions entitle him to no relief.

To prevail on a claim of denial of medical treatment, an inmate must show the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000). Medical treatment of prisoners violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quotation marks and citation omitted). A prison official is not "deliberately indifferent" unless he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (finding, under *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment") (citation and internal quotations omitted). "A defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference." *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016). Within the Eleventh Circuit, medical malpractice and negligence do not constitute deliberate indifference:

> Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere

> negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr*., 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

Thus, to demonstrate deliberate indifference to a serious medical need, Lloyd must show (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and his injury. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–1307 (11th Cir. 2009). To make this showing, Lloyd must establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (finding that for liability to attach defendant must know and disregard excessive risk to prisoner's health or safety).

Regarding the objective component, a plaintiff must first show an objectively serious medical need, followed by a response by defendants inadequate enough to constitute an unnecessary and wanton infliction of pain, not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law. *Taylor*, 221 F.3d at 1258. (Citations omitted). For the required subjective intent, a plaintiff must show the public official acted with an attitude of "deliberate indifference," which requires two things: an awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and drawing of the inference. *Taylor*, 221 F.3d at 1258 (internal citations and quotations omitted).

Thus, deliberate indifference occurs only when a defendant knows of and disregards an excessive risk to inmate health or safety; is aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists; and draws that inference. *Farmer*, 511 U.S. at 837. An "official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Further, neither a difference of opinion on appropriate treatment nor the fact that the treatment was ineffective gives rise to a deliberate indifference claim. *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding mere fact that inmate desires different mode of diagnosis does not amount to deliberate indifference); *Adams*, 61 F.3d at 1545 (stating that whether additional diagnostic techniques or forms of treatment should have been used "is a classic example of a matter for medical judgment" and not a basis for Eighth Amendment liability) (citation omitted). Indeed, when medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey v. Montgomery County Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

Finally, in determining whether a delay in medical treatment constitutes deliberate indifference, courts consider the seriousness of the medical need, whether delay worsened the medical condition, and the reason for the delay. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007); *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003). Additionally, when an inmate complains that a delay in medical treatment rises to the level of a constitutional violation, he "must place verifying medical evidence in the record" establishing the detrimental effect caused by the delay. *Surber v. Dixie Cty. Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (internal citation omitted). Finally, the subjective knowledge of risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person

[knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (citations omitted).

Lloyd does not name as Defendants any prison personnel who provided medical treatment to him on April 15, 2019, following the alleged assault. Indeed, the undisputed medical evidence demonstrates that neither Defendant was "ever responsible for determining necessary medical care to be provided to inmate Lloyd". (Docs. 33-2 at pp. 2-3 and 33-3 at pp. 1-2). Rather, "the Alabama Department of Corrections contracts with Wexford to make sure that all inmates incarcerated with ADOC, including inmate Lloyd, receive necessary medical treatment and/or car for their necessary medical needs." *Id*. Further, both Defendants state that they never "denied or delayed necessary medical care to inmate Lloyd," and they also state they have "never been asked to or had anything to do with any medical care provided to inmate Lloyd." *Id.*

Instead, Lloyd claims that the Correctional Defendants acted in a manner to prevent him access to treatment from professional medical personnel. However, it is clear from the medical records that the Correctional Defendants were not in any way involved in decisions regarding the medical treatment provided to Lloyd, as these decisions are made solely by healthcare professionals employed by the Jail. Moreover, the undisputed medical records demonstrate that Plaintiff was repeatedly treated by Wexford healthcare professional for the injury to his eye received in the April 15, 2019, altercation, (Docs. 33-6, 33-7, 33-8, 33-9), including a first evaluation within thirty minutes following the alleged assault, which included x-rays of his facial bones and orbits. (Doc. 33-1 at p. 3; Doc. 33-7 at pp. 22-23; Doc. 33-6 at pp.10-13). Further, the records confirm that Plaintiff was sent to free world eye doctors on multiple occasions in May, August, October, and November for treatment to his eye. (Docs. 33-9 at pp. 9, 27 and Doc. 33-8 at pp.7, 11).

Thus, the Court concludes that Lloyd has failed to establish deliberate indifference on the part of the Correctional Defendants. Specifically, he has not demonstrated that these Defendants were aware of facts establishing "an objectively serious medical need" nor that these defendants disregarded any known serious risk to Lloyd's health. *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Quinones*, 145 F.3d at 168 (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference); *Farmer*, 511 U.S. at 838 (failure to alleviate significant risk that officer "should have perceived but did not" does not constitute deliberate indifference). Consequently, summary judgment is due to be granted in favor of the Correctional Defendants on Lloyds claim alleging deliberate indifference arising from the actions of medical personnel in treating his injuries resulting from the April 15, 2019, assault.

Also, to the extent Lloyd seeks to hold the Correctional Defendants liable for the treatment provided by medical professionals; however, he is likewise entitled to no relief as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

Even assuming *arguendo* that the Correctional Defendants exerted some control over the manner in which those persons responsible for the provision of medical treatment rendered such treatment, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability]. . . . A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties. Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation and parentheses omitted); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh,* 268 F.3d at 1035 (holding that a supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (holding that 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for actions of the unnamed medical personnel could attach to the other named Defendants only if these Defendants "personally

participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

The record is clear that the Correctional Defendants did not personally participate or have any involvement, direct or otherwise, in the medical treatment provided to Lloyd. (Docs. 33-2 at pp. 2-3 and 33-3 at pp. 1-2). The evidentiary materials before the court demonstrate that medical personnel made all decisions relative to the evaluation and treatment of Lloyd based upon their professional judgment upon assessment of his physical condition. *Id.*

In light of the foregoing, the Correctional Defendants can be held liable for decisions of medical personnel only if they undertook actions which bear a causal relationship to the purported violation of Lloyd's constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of the Correctional Defendants, Lloyd must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in deliberate indifference to [his medical needs], or . . . facts [that] support an inference that [the correctional defendants] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). After extensive review of the pleadings and evidentiary materials submitted in this case, it is clear that Lloyd has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that the Correctional Defendants directed medical personnel to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Lloyd has presented no evidence of obvious, flagrant or rampant abuse of continuing duration regarding his receipt of medical treatment in the

face of which these Defendants failed to take corrective action. Rather, the Warden McClain and Lt. Cousins testified that employees of Wexford with medical training made all decisions related to the healthcare of inmates including Lloyd. (Docs. 33-2 at pp. 2-3 and 33-3 at pp. 1-2). The undisputed records also demonstrate that the challenged course of medical treatment did not occur pursuant to a policy enacted by the Correctional Defendants. Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not justified. *Cf. Employment Div. v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

For the foregoing reasons, summary judgment is likewise due to be granted in favor of the Correctional Defendants with respect to liability based on the theory of respondeat superior. Furthermore, even had Lloyd presented a proper basis for the claims lodged against the Correctional Defendants, the evidentiary materials before the court demonstrate that unnamed health care personnel at Bullock did not act with deliberate indifference to his medical needs resulting from the April 15, 2019, altercation.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Defendants' motion for summary judgment (Doc. 33) be GRANTED.
2. Judgment be GRANTED in favor of the Defendants.
3. This case be DISMISSED with prejudice.
4. Costs be taxed against the Plaintiff.

On or before **July 1, 2022** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's Recommendation shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 17th day of June, 2022.

/s/ Charles S. Coody
UNITED STATES MAGISTRATE JUDGE